Andrew M. Calamari
Sanjay Wadhwa
Gerald Gross
Paul G. Gizzi
James Hanson
Attorneys for the Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0087 (Hanson)


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) |
| Plaintiff, | ) **COMPLAINT** ) |
| v. | ) ) **ECF CASE** |
| EDWARD DURANTE, | ) ) |
| Defendant. | ) ) ) |


Plaintiff Securities and Exchange Commission (the "Commission") alleges the following against defendant Edward Durante ("Durante"):

## SUMMARY

1.     From 2012 to 2014, Durante, a recidivist securities law violator, defrauded at least 50 relatively unsophisticated investors out of at least $11 million through the sale of securities of VGTel, Inc. ("VGTel"), a shell company he controlled. Durante sold approximately six million shares of VGTel stock to investors using a fictitious name to hide his criminal past and lying to investors regarding the use of stock sale proceeds. Durante also bribed two financial industry

workers, Individual 1 and Individual 2, who advised their clients to purchase VGTel stock

without disclosing to their clients that they had been bribed.  Durante also engaged in matched

trading of VGTel stock with a stockbroker, Individual 3, to artificially control the stock's market

price.  Durante's associates, Individual 4 and Individual 5, aided and abetted Durante in his

fraudulent sales, and Individual 4 coordinated matched trading with Individual 3.

     2.      By this action, the Commission seeks injunctive relief, disgorgement of ill-gotten

gains and civil penalties.

## VIOLATIONS

     3.      Based on the conduct alleged in this Complaint, Durante is liable for violations of

Sections 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)], and

Sections 9(a)(1) and 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C.

§§ 78i(a)(1) and 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5].

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

     4.      The Commission brings this action pursuant to authority conferred by Section

20(b) of the Securities Act [15 U.S.C. § 77t(b)], and Section 21(d)(1) of the Exchange Act [15

U.S.C. § 78u(d)(1)], seeking to permanently enjoin Durante from engaging in the acts, practices,

transactions and courses of business alleged herein. The Commission also seeks a final

judgment: (i) prohibiting Durante from soliciting transactions in any security; (ii) ordering

Durante to disgorge his ill-gotten gains and to pay prejudgment interest thereon; and (iii)

imposing civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. §

77t(d)], and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

## JURISDICTION AND VENUE

     5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, Sections

20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)], and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. A substantial part of the events or omissions giving rise to the claims herein occurred in the Southern District of New York. For instance, Durante maintained an office and numerous nominee banks accounts in this district, and Durante was a resident of this district.

7.      In connection with the conduct alleged in this complaint, Durante, directly or indirectly, have made use of the means or instruments of transportation or communication in, and the means or instrumentalities of, interstate commerce, or of the mails, or of the facilities of a national securities exchange.

**DEFENDANT**

8.      Durante (aka "Edward Wise," "Ted Wise," "Efran Eisenberg," and "Anthony Walsh"), age 67, is a recidivist securities law violator. He was convicted of violating the federal securities laws, and in September 2003, he was sentenced to 121 months imprisonment followed by three years supervised release. *U.S. v. Durante*, 1:01-cr-1020 (S.D.N.Y.). He was released from prison in June 2009 and was on probation until November 2012. In *SEC v. Wamex Holdings, Inc. et al.*, No. 01-Civ-9056 Durante was held liable for securities fraud and was ordered to pay $33,783,565.26 in disgorgement together with pre-judgment interest in the amount of $6,097,115.60. This judgment remains outstanding.

**RELEVANT PERSONS AND ENTITY**

9.      Individual 3 has been associated with several registered broker-dealers between July 2012 and present.

10.     Individual 1 was an associated person of a dually-registered investment adviser and broker-dealer between May 2002 and December 2013.

11.     Individual 2 owned and operated Entity 1 during the relevant period.

12.     Individual 4 has since August 2010 worked for Durante as his assistant on proposed deals involving VGTel and by placing stock trades at Durante's direction.

13.     Individual 5 worked as nominee for Durante's control over New Market Enterprises, Inc. ("New Market") and Zenith Estates, Inc. ("Zenith").

14.     Entity 1 is an investment adviser owned by Individual 2 that was registered from 2011 through 2015.

## FACTS

### A.     Background

15.     While serving his ten-year prison term for a securities fraud conviction, Durante began laying the groundwork for his next stock fraud. While still in prison, Durante used the fictitious name "Anthony Walsh" to negotiate the acquisition of VGTel as a shell company. As a result of the purchase, Durante came to control almost all of the issued shares of VGTel. Durante assigned VGTel certificates to several entities he apparently controlled in order to disguise the fact that he controlled most of the outstanding stock of VGTel. Durante also formed his private companies, New Market and Zenith.

16.     After his release from prison, Durante moved to New York City and conducted his business activities at Zenith's and New Market's offices in Manhattan. In 2010, Durante hired Individual 4 to help him develop VGTel's business. Durante was unsuccessful in obtaining financing because potential investors had concerns about his criminal history, and therefore, VGTel never had any ongoing business operations. In 2012, Durante told Individual 4 he was

going to use a fictitious name to sell VGTel securities and asked Individual 4 what he thought about Durante using the name "Efran Eisenberg." Shortly thereafter, to avoid investor concerns about his criminal history, Durante began using the fictitious names Ted Wise and Efran Eisenberg in addition to occasionally using Anthony Walsh as he had previously.

17.     In 2009, Durante hired Individual 5 to nominally control Zenith's and New Market's bank accounts and to process the transfer of funds to Durante. At Durante's direction, Individual 5 withdrew cash from these accounts for, among other things, paying kickbacks to Individual 2 and Individual 3. Individual 5 also obtained debit cards in his name for the New Market and Zenith accounts and gave them to Durante for Durante's personal use.

**B.     New England Investors**

18.     Between 2012 and 2013, Durante sold approximately $1.2 million worth of worthless VGTel stock to Investor A, who lives in the New England area, and at least thirty of his friends and family members. When soliciting stock sales, Durante identified himself as Ted Wise whenever communicating with Investor A. Durante's false identity prevented Investor A and other investors from learning about Durante's criminal history.

19.     Durante told Investor A that VGTel was a publicly traded company that could expand quickly. Durante told Investor A that he had done several major deals and that he had obtained large investments for VGTel. Both of these statements were false. Durante also told Investor A that, although he was not a VGTel officer or board member, he nonetheless controlled the company.

20.     Based on these conversations, Investor A introduced Durante to at least 30 friends and/or family members who ultimately became VGTel investors.

21.     In early 2013, Durante traveled to, and held approximately four sales meetings in,

Tewksbury, Massachusetts. During these meetings, Durante continued to represent himself as Ted Wise. Durante told these investors that the stock sale proceeds would be used by VGTel to fund its operations (as opposed to being paid to the stock seller, in this case Durante).

22.     Durante also told investors that VGTel's stock price would increase significantly, and at one point predicted a $50 per share price.

23.     In total, Investor A and his friends and family members purchased approximately $1.2 million of VGTel stock from Durante, and as Durante directed, investors sent their funds to either Zenith or New Market.

24.     Durante explained to Investor A that there was only a limited amount of shares of VGTel, and that by having friendly investors purchase the majority of the shares, Durante could ensure the stability of the market. Durante said that this type of control made the investments in VGTel safe. Based on these representations, Investor A also recommended that his family and friends purchase VGTel stock in the public market.

**C.     Individual 1's Clients**

25.     Individual 1, while working as an associated person of a dually-registered investment adviser and broker-dealer, had approximately 30 clients, mostly conservative, older investors, who owned annuities.

26.     In 2012, Durante contacted Individual 1 using the fictitious name Ted Wise and offered to pay Individual 1 in exchange for transferring her clients to him. In 2013, Individual 1 sold her business to Durante for $377,500 and agreed to continue working with her clients at Durante's direction.

27.     Although Individual 1 informed her clients that she was associating with Durante (Ted Wise), she never informed them about the $377,500 payment she received from Durante.

28.     At Durante's direction, Individual 1 advised at least 20 of her clients to sell their annuities, often incurring penalties, and then Individual 1 solicited the clients to purchase VGTel stock.

29.     Also at Durante's direction, Individual 1 arranged for at least 20 of her clients to open brokerage accounts using Individual 3 as the account representative.

30.     Individual 1 invited Durante to solicit sales of VGTel stock directly to her clients. At one sales meeting in San Diego in September 2013, Durante (posing as Ted Wise) told investors that VGTel would be a profitable investment.

31.     Individual 1 vouched for Durante's predictions, promising that investors would double or triple their money by investing in VGTel. As a result, at least 20 Individual 1 clients invested a total of approximately $2 million by making purchases in trading accounts Individual 1 helped them to open.

32.     In addition, several of Individual 1's clients purchased VGTel stock directly from Durante by writing checks to Zenith or New Market.

33.     Beginning in 2014, Durante caused Individual 1 to be paid at least $110,000 in kickbacks for soliciting VGTel stock sales, which Individual 1 never disclosed to her clients.

34.     In November 2013, Individual 1 repeatedly called one of her client's stockbroker, impersonating the client, and directing the sale of existing investments to finance the purchase of VGTel stock. Shortly thereafter, in November and December 2013, again impersonating the client, Individual 1 placed orders to purchase approximately $1,000,000 of VGTel stock.

35.     In July 2013 Individual 1 purchased VGTel stock in another client's account without authorization when Individual 1 knew that the client was away on vacation.

7

**D.      Individual 2's Investment Adviser Clients**

36.      In approximately 2010, Individual 2 entered into a consulting agreement with Durante's company, New Market.  Pursuant to this agreement, Durante caused Individual 5 to pay Individual 2 $200,000 in exchange for Individual 2 inducing six of his clients to purchase approximately $2 million worth of VGTel stock.

37.      On another occasion, Durante directed Individual 5 to send Individual 2 three cash payments of $9,500 each as a commission for causing another client to purchase approximately $150,000 of VGTel stock from New Market.

38.      Individual 2 invited some of his clients to attend a sales presentation regarding VGTel conducted by Durante, who introduced himself to investors as Edward Wise.  Individual 2 took no steps to learn anything about the assets or revenues of VGTel, did not review its balance sheet, never met with an officer or director of the company, and never performed any due diligence regarding VGTel other than talking to Durante.  Nonetheless, in 2012 and 2013, Individual 2 recommended investments in VGTel to his clients.

39.      When recommending VGTel to his clients, Individual 2 made no disclosure of any compensation from Durante, either the $200,000 "consulting" payment from Durante, the $28,500 cash kickback from Individual 5, or anything about Individual 2's financial relationship with Durante or New Market.

40.      Individual 2 also did not disclose to his clients that Durante used a fictitious name or that Durante had a criminal history.

**E.      Matched Trading in VGTel Stock**

41.      Individual 4 introduced Durante to Individual 3 for the purpose of Durante maintaining artificial control of the publicly traded stock price of VGTel.

42.     Individual 3 and Durante engaged in matched trades of VGTel stock in accounts
maintained by Durante and Individual 5 at the broker-dealer where Individual 3 worked.
Durante paid Individual 3 secret cash payments of at least $30,000.

43.     Durante caused at least 23 customer accounts to be set up at a clearing firm to
trade VGTel stock.  Beginning in August 2013, these accounts, which were comprised of a
mixture of Individual 1's clients, Individual 2's clients, and accounts in the name of New Market
and Zenith, were opened with Individual 3 acting as the trader for the accounts.

44.     None of the investors' accounts provided for third-party trading authority for
Durante.

45.     Individual 4 assisted Durante in coordinating the trading with Individual 3, and
Individual 4 placed matched trades with Individual 3 at Durante's direction.

46.     Individual 3 was in frequent communication with Durante.  During these
communications, Durante explicitly discussed his desire to manipulate and control VGTel's
stock price.  For example, on August 12, 2013, Individual 3 and Durante (using an alias) were
discussing via email opening a trading account for one of Individual 1's clients.  Durante wrote
to Individual 3 and asked him to control bidding at approximately $1.04 per share: "Please set
these accounts up for [an Individual 1client].  Ted [Wise] will be out of office until the
afternoon.  He will call you when available.  Please keep bids in the 1.04/05 range and he will
give you further details."

47.     Durante's and Individual 3's manipulative trading caused VGTel's share price to
steadily increase from $0.25 in April 2013 to $1.90 in October 2013.

48.     At times, Durante placed matched VGTel stock purchase and sell orders during
the course of one telephone call to Individual 3.  For example, during the same call, Durante

would place a VGTel stock sell order on behalf of New Market or Zenith to be matched at the

same price and share amount against a VGTel stock purchase order on behalf of one of

Individual 1's or Individual 2's clients.

49.     The trading proceeds and funds sent to New Market or Zenith by investors were

transferred to Durante, or made available for Durante's personal use, by Individual 5, who

opened bank accounts and trading accounts to facilitate Durante's fraudulent conduct.

## FIRST CLAIM FOR RELIEF

### Violations of Section 17(a) of the Securities Act

50.     The Commission realleges and incorporates by reference herein each and every

allegation contained in paragraphs 1 through 49 of this Complaint.

51.     From around May 2012 through 2014, Durante, directly or indirectly, singly or in

concert, by use of the means or instruments of transportation or communication in interstate

commerce, or of the mails, in the offer or sale of securities, has: (a) employed devices, schemes

and artifices to defraud; (b) obtained money or property by means of untrue statements of

material fact, or have omitted to state material facts necessary in order to make statements made,

in light of the circumstances under which they were made, not misleading; and (c) engaged in

transactions, practices and courses of business which operated or would have operated as a fraud

or deceit upon purchasers.

52.     By reason of foregoing, Durante violated, and, unless enjoined, is reasonably

likely to continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5

53.     The Commission realleges and incorporates by reference herein each and every

allegation contained in paragraphs 1 through 52 of this Complaint.

54.     From around May 2012 through the present, Durante, directly or indirectly, singly

or in concert, by use of the means or instrumentalities of interstate commerce, or of the mails, or

of the facilities of a national securities exchange, in connection with the purchase or sale of

securities, has: (a) employed devices, schemes and artifices to defraud; (b) made untrue

statements of material fact, or omitted to state material facts necessary in order to make

statements made, in light of the circumstances under which they were made, not misleading; and

(c) engaged in acts, practices and courses of business which operated or would have operated as

a fraud or deceit upon investors.

55.     By reason of the foregoing, Durante violated, and, unless enjoined, is reasonably

likely to continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule

10b-5 [17 C.F.R. § 240.10b-5].

### THIRD CLAIM FOR RELIEF

### Violations of Section 9(a)(1) of the Exchange Act

56.     The Commission realleges and incorporates by reference herein each and every

allegation contained in paragraphs 1 through 55 of this Complaint.

58.     From around August 2013 to 2014, Durante, directly or indirectly, by the use of

the mails or any means or instrumentality of interstate commerce, or of any facility of any

national securities exchange, for the purpose of creating a false or misleading appearance of

active trading in any security other than a government security, or a false or misleading

appearance with respect to the market for any such security, has entered orders for the purchase

or sale of a security with the knowledge that an order or orders of substantially the same size, at

substantially the same time, and at substantially the same price, for the sale or purchase of any

such security, has been or will be entered by or for the same or different parties.

59.     Durante knowingly or recklessly paid kickbacks in order to facilitate matched trading in VGTel stock with the intent of manipulating the market for VGTel stock.

60.     By reason of the foregoing, the Durante violated, and, unless enjoined, is reasonably likely to continue to violate Section 9(a)(1) of the Exchange Act [15 U.S.C. § 78i(a)(1)].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court grant the following relief:

## I.

A Final Judgment permanently restraining and enjoining Defendant, his agents, servants, employees and attorneys and all persons in active concert or participation with him, who receive actual notice of the injunction by personal service or otherwise, and each of them, from committing future violations of each of the securities laws and rules promulgated thereunder as alleged herein, and prohibiting Defendant from soliciting transactions in any security.

## II.

A Final Judgment ordering Defendant to disgorge his ill-gotten gains and to pay prejudgment interest thereon.

## III.

A Final Judgment ordering Defendant to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

## IV.

Such other and further relief as this Court deems just and proper.

Dated:  December 18, 2015
        New York, New York

*Sanjay Wadhwa*
_____

Sanjay Wadhwa
Andrew M. Calamari
Gerald Gross
Paul G. Gizzi
James Hanson
New York Regional Office
SECURITIES AND EXCHANGE
 COMMISSION
200 Vesey Street, Suite 400
New York, New York 10281
(212) 336-0087 (Hanson)
Attorneys for the Plaintiff

13