Andrew M. Calamari
Sanjay Wadhwa
Gerald Gross
Paul G. Gizzi
James Hanson
**Attorneys for the Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**200 Vesey Street, Suite 400**
**New York, New York 10281-1022**
**(212) 336-0087 (Hanson)**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br><br>Plaintiff, )<br><br>v. )<br><br>EDWARD DURANTE,<br>ABIDA KHAN,<br>LARRY WERBEL,<br>CHRISTOPHER CERVINO,<br>WALTER REISSMAN,<br>KENNETH WISE<br>and<br>EVOLUTION PARTNERS WEALTH<br>MANAGEMENT LLC, )<br><br>Defendants. ) | **FIRST AMENDED**<br>**COMPLAINT**<br><br>**ECF CASE**<br><br>**15-CV-9874-RJS** |

        Plaintiff Securities and Exchange Commission (the "Commission") alleges the following

against defendants Edward Durante ("Durante"), Abida Khan ("Khan"), Larry Werbel

("Werbel"), Christopher Cervino ("Cervino"), Walter Reissman ("Reissman"), Kenneth Wise

("Ken Wise") and Evolution Partners Wealth Management LLC ("Evolution Partners")
(collectively, "Defendants"):

## SUMMARY

1.      From 2012 to 2014, Durante, a recidivist securities law violator, defrauded at least
50 relatively unsophisticated investors out of at least $11 million through the sale of securities of
VGTel, Inc. ("VGTel"), a shell company he controlled.  Durante sold approximately six million
shares of VGTel stock to investors using a fictitious name to hide his criminal past and lying to
investors regarding the use of stock sale proceeds.  Durante also bribed Khan and Werbel, the
managing member of Evolution Partners, who advised their clients to purchase VGTel stock
without disclosing to their clients that they had been bribed.  Durante also engaged in matched
trading of VGTel stock with a stockbroker, Cervino, to artificially control the stock's market
price.  Durante's associates, Reissman and Ken Wise, aided and abetted Durante in his
fraudulent sales.

2.      By this action, the Commission seeks injunctive relief, disgorgement of ill-gotten
gains and civil penalties.

## VIOLATIONS

3.      Based on the conduct alleged in this Complaint: (a) Durante and Cervino are
liable for violations of Sections 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C.
§§ 77q(a)], and Sections 9(a)(1) and 10(b) of the Securities Exchange Act of 1934 ("Exchange
Act") [15 U.S.C. §§ 78i(a)(1) and 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5]; (b) Khan and
Werbel are liable for having aided and abetted Durante's and Cervino's violations of Section
17(a) of the Securities Act [15 U.S.C. §§ 77q(a)]; (c) Khan and Werbel are liable for violations
of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-

5]; (d) Werbel and Evolution Partners are liable for violations of Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1) and 80b-6(2)]; (e) Werbel aided and abetted Evolution Partners' violations of Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)]; (f) Reissman aided and abetted Durante's and Cervino's violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], and Sections 9(a)(1) and 10(b) of the Exchange Act [15 U.S.C. §§ 78i(a)(1) and 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5]; and (g) Ken Wise aided and abetted Durante's violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], and Sections 9(a)(1) and 10(b) of the Exchange Act [15 U.S.C. §§ 78i(a)(1) and 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5].

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

4.      The Commission brings this action pursuant to authority conferred by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)], and Section 209 of the Advisers Act [15 U.S.C. § 80b-9], seeking to permanently enjoin the Defendants from engaging in the acts, practices, transactions and courses of business alleged herein. The Commission also seeks a final judgment: (i) prohibiting Durante from soliciting transactions in any security; (ii) ordering Defendants to disgorge their ill-gotten gains and to pay prejudgment interest thereon; (iii) imposing civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]; and (iv) prohibiting Cervino, Reissman and Ken Wise from participating in an offering of penny stock pursuant to Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)] and Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)].

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, Sections

20(b), 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)], Sections

21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa], and Section

214 of the Advisers Act [15 U.S.C. § 80b-14].

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), Section 22(a)

of the Securities Act [15 U.S.C. § 77v(a)], Section 27 of the Exchange Act [15 U.S.C. § 78aa],

and Section 214 of the Advisers Act [15 U.S.C. § 80b-14].  A substantial part of the events or

omissions giving rise to the claims herein occurred in the Southern District of New York.  For

instance, Durante, Ken Wise and Reissman maintained an office and numerous banks accounts

in this district, and Durante and Ken Wise were residents of this district.

7.     In connection with the conduct alleged in this complaint, the Defendants, directly

or indirectly, have made use of the means or instruments of transportation or communication in,

and the means or instrumentalities of, interstate commerce, or of the mails, or of the facilities of

a national securities exchange.

## DEFENDANTS

8.     Durante (aka "Edward Wise," "Ted Wise," "Efran Eisenberg," and "Anthony

Walsh"), age 67, is a recidivist securities law violator.  He was convicted of violating the federal

securities laws, and in September 2003, he was sentenced to 121 months imprisonment followed

by three years supervised release.  *U.S. v. Durante*, 1:01-cr-1020 (S.D.N.Y.).  He was released

from prison in June 2009 and was on probation until November 2012.  In *SEC v. Wamex*

*Holdings, Inc. et al.*, No. 01-Civ-9056, Durante was held liable for securities fraud and was

ordered to pay $33,783,565.26 in disgorgement together with pre-judgment interest in the

4

amount of $6,097,115.60.  This judgment remains outstanding.

9.      Cervino, age 43, is a resident of Clifton, New Jersey.  He has been associated with several registered broker-dealers between July 2012 and present.

10.     Khan (aka Sheik Firdosh Khan), age 52 and a resident of San Diego, California, was an associated person of a dually-registered investment adviser and broker-dealer between May 2002 and December 2013.

11.     Werbel, age 67 and a resident of Solon, Ohio, owns and operates Evolution Partners.

12.     Reissman, age 57, is a resident of Monsey, New York.  Since August 2010, Reissman worked for Durante as his assistant on proposed deals involving VGTel and by placing stock trades at Durante's direction.

13.     Ken Wise, age 74, is a resident of New York, New York.  He worked as nominee for Durante's control over New Market Enterprises, Inc. ("New Market") and Zenith Estates, Inc. ("Zenith").

14.     Evolution Partners is an investment adviser owned by Werbel that was registered from 2011 through 2015

## FACTS

### A.      Background

15.     While serving his ten-year prison term for a securities fraud conviction, Durante began laying the groundwork for his next stock fraud.  In 2011, Durante used the fictitious name "Anthony Walsh" to negotiate the acquisition of VGTel as a shell company.  As a result of the purchase, Durante came to control almost all of the issued shares of VGTel.  Durante assigned VGTel certificates to several entities he apparently controlled in order to disguise the fact that he

controlled most of the outstanding stock of VGTel.  Durante also formed his private companies, New Market and Zenith.

16.     After his release from prison, Durante moved to New York City and conducted his business activities at Zenith's and New Market's offices in Manhattan.  In 2010, Durante hired Reissman to help him develop VGTel's business.  Durante was unsuccessful in obtaining financing because potential investors had concerns about his criminal history, and therefore, VGTel never had any ongoing business operations.  In 2012, Durante told Reissman he was going to use a fictitious name to sell VGTel securities and asked Reissman what he thought about Durante using the name "Efran Eisenberg."  Shortly thereafter, to avoid investor concerns about his criminal history, Durante began using the fictitious names Ted Wise and Efran Eisenberg in addition to occasionally using Anthony Walsh as he had previously.

17.     In 2009, Durante hired Ken Wise to nominally control Zenith's and New Market's bank accounts and to process the transfer of funds to Durante.  At Durante's direction, Ken Wise withdrew cash from these accounts for, among other things, paying kickbacks to Werbel and Cervino.  Ken Wise also obtained debit cards in his name for the New Market and Zenith accounts and gave them to Durante for Durante's personal use.

**B.     New England Investors**

18.     Between 2012 and 2013, Durante sold approximately $1.2 million worth of worthless VGTel stock to Investor A, who lives in the New England area, and at least thirty of his friends and family members.  When soliciting stock sales, Durante identified himself as Ted Wise whenever communicating with Investor A.  Durante's false identity prevented Investor A and other investors from learning about Durante's criminal history.

19.     Durante told Investor A that VGTel was a publicly traded company that could

expand quickly. Durante told Investor A that he had done several major deals and that he had

obtained large investments for VGTel. Both of these statements were false. Durante also told

Investor A that, although he was not a VGTel officer or board member, he nonetheless controlled

the company.

20.     Based on these conversations, Investor A introduced Durante to at least 30 friends

and/or family members who ultimately became VGTel investors.

21.     In early 2013, Durante traveled to, and held approximately four sales meetings in,

Tewksbury, Massachusetts. During these meetings, Durante continued to represent himself as

Ted Wise. Durante told these investors that the stock sale proceeds would be used by VGTel to

fund its operations (as opposed to being paid to the stock seller, in this case Durante).

22.     Durante also told investors that VGTel's stock price would increase significantly,

and at one point predicted a $50 per share price.

23.     In total, Investor A and his friends and family members purchased a total of

approximately $1.2 million of VGTel stock from Durante, and as Durante directed, investors sent

their funds to either Zenith or New Market.

24.     Durante explained to Investor A that there was only a limited amount of shares of

VGTel, and that by having friendly investors purchase the majority of the shares, Durante could

ensure the stability of the market. Durante said that this type of control made the investments in

VGTel safe. Based on these representations, Investor A also recommended that his family and

friends purchase VGTel stock in the public market.

C.     **Khan's Clients**

25.     Khan, while working as an associated person of a dually-registered investment

adviser and broker-dealer, had approximately 30 clients, mostly conservative, older investors,

7

who owned annuities.

26.     In 2012, Durante contacted Khan using the fictitious name Ted Wise and offered
to pay Khan in exchange for transferring her clients to him.  In 2013, Khan sold her business to
Durante for $377,500 and agreed to continue working with her clients at Durante's direction.

27.     Although Khan informed her clients that she was associating with Durante (Ted
Wise), she never informed them about the $377,500 payment she received from Durante.

28.     At Durante's direction, Khan advised at least 20 of her clients to sell their
annuities, often incurring penalties, and then Khan solicited the clients to purchase VGTel stock.

29.     Also at Durante's direction, Khan arranged for at least 20 of her clients to open
brokerage accounts using Cervino as the account representative.

30.     Khan invited Durante to solicit sales of VGTel stock directly to her clients.  At
one sales meeting in San Diego in September 2013, Durante (posing as Ted Wise) told investors
that VGTel would be a profitable investment.

31.     Khan vouched for Durante's predictions, promising that investors would double
or triple their money by investing in VGTel.  As a result, at least 20 Khan clients invested a total
of approximately $2 million by making purchases in trading accounts Khan helped them to open.

32.     In addition, several of Khan's clients purchased VGTel stock directly from
Durante by writing checks to Zenith or New Market.

33.     Beginning in 2014, Durante caused Khan to be paid at least $110,000 in
kickbacks for soliciting VGTel stock sales, which Khan never disclosed to her clients.

34.     In November 2013, Khan repeatedly called one of her client's stockbroker,
impersonating the client, and directing the sale of existing investments to finance the purchase of
VGTel stock.  Shortly thereafter, in November and December 2013, again impersonating the

client, Khan placed orders to purchase approximately $1,000,000 of VGTel stock.

35.    In July 2013 Khan purchased VGTel stock in another client's account without authorization when Khan knew that the client was away on vacation.

**D.    Werbel's Investment Adviser Clients**

36.    In approximately 2010, Werbel entered into a consulting agreement with Durante's company, New Market.  Pursuant to this agreement, Durante caused Ken Wise to pay Werbel $200,000 in exchange for Werbel inducing six of his clients to purchase approximately $2 million worth of VGTel stock.

37.    On another occasion, Durante directed Ken Wise to send Werbel three cash payments of $9,500 each as a commission for causing another client to purchase approximately $150,000 of VGTel stock from New Market.

38.    Werbel took no steps to learn anything about the assets or revenues of VGTel, did not review its balance sheet, never met with an officer or director of the company, and never performed any due diligence regarding VGTel other than talking to Durante.  Nonetheless, in 2012 and 2013, Werbel recommended investments in VGTel to his clients.

39.    When recommending VGTel to his clients, Werbel made no disclosure of any compensation from Durante, either the $200,000 "consulting" payment from Durante, the $28,500 cash kickback from Ken Wise, or anything about Werbel's financial relationship with Durante or New Market.

40.    Werbel also did not disclose to his clients that Durante used a fictitious name or that Durante had a criminal history.

**E.    Matched Trading in VGTel Stock**

41.    Reissman introduced Durante to Cervino for the purpose of Durante maintaining

artificial control of the publicly traded stock price of VGTel.

42.     Cervino and Durante engaged in matched trades of VGTel stock in accounts maintained by Durante and Ken Wise at the broker-dealer where Cervino worked.  Durante paid Cervino secret cash payments of at least $30,000.

43.     Durante caused at least 23 customer accounts to be set up at a clearing firm to trade VGTel stock.  Beginning in August 2013, these accounts, which were comprised of a mixture of Khan's clients, Werbel's clients, and accounts in the name of New Market and Zenith, were opened with Cervino acting as the trader for the accounts.

44.     None of the investors' accounts provided for third-party trading authority for Durante.

45.     Reissman assisted Durante in coordinating the trading with Cervino, and Reissman placed orders to sell his own shares of VGTel stock at Durante's direction.

46.     Cervino was in frequent communication with Durante.  During these communications, Durante explicitly discussed his desire to manipulate and control VGTel's stock price.  For example, on August 12, 2013, Cervino and Durante (using an alias) were discussing via email opening a trading account for one of Khan's clients.  Durante wrote to Cervino and asked him to control bidding at approximately $1.04 per share: "Please set these accounts up for [a Khan client].  Ted [Wise] will be out of office until the afternoon.  He will call you when available.  Please keep bids in the 1.04/05 range and he will give you further details."

47.     Durante's and Cervino's manipulative trading caused VGTel's share price to steadily increase from $0.25 in April 2013 to $1.90 in October 2013.

48.     At times, Durante placed matched VGTel stock purchase and sell orders during the course of one telephone call to Cervino.  For example, during the same call, Durante would

place a VGTel stock sell order on behalf of New Market or Zenith to be matched at the same price and share amount against a VGTel stock purchase order on behalf of one of Khan's or Werbel's clients.

49.     The trading proceeds and funds sent to New Market or Zenith by investors were transferred to Durante, or made available for Durante's personal use, by Ken Wise, who opened bank accounts and trading accounts to facilitate Durante's fraudulent conduct.

## FIRST CLAIM FOR RELIEF

### Violations of Section 17(a) of the Securities Act
### (Durante and Cervino)

50.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 49 of this Complaint.

51.     From around May 2012 through 2014, Durante and Cervino, directly or indirectly, singly or in concert, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails, in the offer or sale of securities, have: (a) employed devices, schemes and artifices to defraud; (b) obtained money or property by means of untrue statements of material fact, or have omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices and courses of business which operated or would have operated as a fraud or deceit upon purchasers.

52.     By reason of the foregoing, Durante and Cervino have violated, and, unless enjoined, are reasonably likely to continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5
### (Durante, Cervino, Khan and Werbel)

53.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 49 of this Complaint.

54.     From around May 2012 through the present, Durante, Cervino, Khan and Werbel, directly or indirectly, singly or in concert, by use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities, have: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact, or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices and courses of business which operated or would have operated as a fraud or deceit upon investors.

55.     By reason of the foregoing, Durante, Cervino, Khan and Werbel have violated, and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF

### Violations of Sections 206(1) and 206(2) of the Advisers Act
### (Werbel and Evolution Partners)

56.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 49 of this Complaint.

57.     From approximately May 2012 through the present, Werbel and Evolution Partners, as investment advisers, directly or indirectly, singly or in concert, by use of the mails or any means or instrumentality of interstate commerce or of the mails, have employed devices,

schemes and artifices to defraud their clients, and have engaged in transactions, acts, practices and courses of business which operate as a fraud and deceit upon their clients.

58.     By reason of the foregoing, Werbel and Evolution Partners have violated, and, unless enjoined, are reasonably likely to continue to violate, Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

### FOURTH CLAIM FOR RELIEF

#### Violations of Section 9(a)(1) of the Exchange Act
#### (Durante and Cervino)

59.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 49 of this Complaint.

60.     From around August 2013 to 2014, Durante and Cervino, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange, for the purpose of creating a false or misleading appearance of active trading in any security other than a government security, or a false or misleading appearance with respect to the market for any such security, have entered orders for the purchase or sale of a security with the knowledge that an order or orders of substantially the same size, at substantially the same time, and at substantially the same price, for the sale or purchase of any such security, has been or will be entered by or for the same or different parties.

61.     Durante knowingly or recklessly paid kickbacks in order to facilitate matched trading in VGTel stock with the intent of manipulating the market for VGTel stock.

62.     By reason of the foregoing, Durante and Cervino have violated, and, unless enjoined, are reasonably likely to continue to violate, Section 9(a)(1) of the Exchange Act [15 U.S.C. § 78i(a)(1)].

## FIFTH CLAIM FOR RELIEF

**Aiding and Abetting Violations of Section 17(a) of the Securities Act
(Khan and Werbel)**

63.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 49 of this Complaint.

64.     From around May 2012 through 2014, Durante and Cervino, directly or indirectly, singly or in concert, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails, in the offer or sale of securities, have: (a) employed devices, schemes and artifices to defraud; (b) obtained money or property by means of untrue statements of material fact, or have omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, acts and courses of business which operated or would have operated as a fraud or deceit upon purchasers, and by reason of the foregoing have violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

65.     From around May 2012 through 2014, Khan and Werbel knowingly or recklessly provided substantial assistance to Durante's and Cervino's violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

66.     By reason of the foregoing, Khan and Werbel aided and abetted, and, unless enjoined, are reasonably likely to continue to aid and abet, violations of Section 17(a) of the Securities Act  [15 U.S.C. § 77q(a)].

## SIXTH CLAIM FOR RELIEF

**Aiding and Abetting Violations of Sections 206(1) and 206(2) of the Advisers Act
(Werbel)**

67.     The Commission realleges and incorporates by reference herein each and every

14

allegation contained in paragraphs 1 through 49 of this Complaint.

68.     From approximately May 2012 through the present, Evolution Partners, as investment adviser, directly or indirectly, singly or in concert, by use of the mails or any means or instrumentality of interstate commerce, has employed devices, schemes and artifices to defraud its clients, and has engaged in transactions, practices and courses of business which operate as a fraud and deceit upon its clients, and by reason of the foregoing has violated, Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

69.     From 2012 to 2014, Werbel knowingly or recklessly provided substantial assistance to Evolution Partner's violations of Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

70.     By reason of the foregoing, Werbel aided and abetted, and, unless enjoined, is reasonably likely to continue to aid and abet, violations of Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

## SEVENTH CLAIM FOR RELIEF

### Aiding and Abetting Violations of Section 17(a) of the Securities Act, and Sections 9(a)(1) and 10(b) of the Exchange Act and Rule 10b-5 thereunder (Reissman and Wise)

71.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 49 of this Complaint.

72.     From around May 2012 through 2014, Durante and Cervino, directly or indirectly, singly or in concert, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails, in the offer or sale of securities, have: (a) employed devices, schemes and artifices to defraud; (b) obtained money or property by means of untrue statements of material fact, or have omitted to state material facts necessary in order to make

statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, acts and courses of business which operated or would have operated as a fraud or deceit upon the Defendants' clients, and by reason of the foregoing have violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

73.     From around May 2011 through the present, Durante and Cervino, directly or indirectly, singly or in concert, by use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities, have: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact, or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices and courses of business which operated or would have operated as a fraud or deceit upon investors, and by reason of the foregoing have violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5].

74.     From around August 2013 through 2014, Durante and Cervino, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange, for the purpose of creating a false or misleading appearance of active trading in any security other than a government security, or a false or misleading appearance with respect to the market for any such security, have entered orders for the purchase or sale of a security with the knowledge that an order or orders of substantially the same size, at substantially the same time, and at substantially the same price, for the sale or purchase of any such security, has been or will be entered by or for the same or different parties.

75.     Durante knowingly or recklessly paid kickbacks in order to facilitate matched trading in VGTel stock with the intent of manipulating the market for VGTel stock.

76.     By reason of the foregoing, Durante and Cervino violated Section 9(a)(1) of the Exchange Act [15 U.S.C. § 78i(a)(1)].

77.     From May 2012 through 2014 Reissman and Wise knowingly or recklessly provided substantial assistance to Durante's violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Sections 9(a)(1) and 10(b) of the Exchange Act [15 U.S.C. §§ 78i(a)(1) and 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5].

78.     From around August 2013 to 2014, Reissman knowingly or recklessly provided substantial assistance to Cervino's violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Sections 9(a)(1) and 10(b) of the Exchange Act [15 U.S.C. §§ 78i(a)(1) and 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5].

79.     By reason of the foregoing, Reissman and Wise aided and abetted, and, unless enjoined, are reasonably likely to continue to aid and abet, violations of Section 17(a) of the Securities Act  [15 U.S.C. § 77q(a)] and Sections 9(a)(1) and 10(b) of the Exchange Act [15 U.S.C. §§ 78i(a)(1) and 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court grant the following relief:

### I.

A Final Judgment permanently restraining and enjoining Defendants, their agents, servants, employees and attorneys and all persons in active concert or participation with them, who receive actual notice of the injunction by personal service or otherwise, and each of them, from committing future violations of each of the securities laws and rules promulgated thereunder as alleged herein; and prohibiting defendant Durante from soliciting transactions in any security.

### II.

A Final Judgment ordering Defendants to disgorge their ill-gotten gains, and to pay prejudgment interest thereon.

### III.

A Final Judgment ordering Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

### IV.

A Final Judgment prohibiting defendants Cervino, Reissman and Ken Wise from participating in any offering of penny stock pursuant to Section 20(g) of the Securities Act, 15 U.S.C. § 77t(g), and Section 21(d)(6) of the Exchange Act, 15 U.S.C. § 78u(d)(6).

**V.**

Such other and further relief as this Court deems just and proper.

Dated:  January 6, 2016
         New York, New York

                                        Sanjay Wadhwa
                                        _____
                                        Sanjay Wadhwa
                                        Andrew M. Calamari
                                        Gerald Gross
                                        Paul G. Gizzi
                                        James Hanson
                                        New York Regional Office
                                        SECURITIES AND EXCHANGE
                                          COMMISSION
                                        200 Vesey Street, Suite 400
                                        New York, New York 10281
                                        (212) 336-0087 (Hanson)
                                        Attorneys for the Plaintiff

19